## Staunton.

### ROANOKE WATER WORKS COMPANY V.
### ROANOKE GLASS COMPANY, INC.

September 20, 1928.

230

The opinion states the case.

*C. E. Hunter* and *Funkhouser & Apperson*, for the appellant.

*Woodrum, McCauley & Parsons*, for the appellee.

HOLT, J., delivered the opinion of the court.

Prior to June 1, 1887, the Roanoke Land and Improvement Company owned certain lands in the city of Roanoke, and it also owned certain water works, easements, franchises, etc., and was engaged in the business of furnishing water to the inhabitants of that city. One of its water mains was in what was known as Holliday street, as is shown by a map filed in the records. On June 17,1 887, said Roanoke Land and Improvement Company conveyed to the Roanoke

Water Company, a corporation, certain properties, water works, easements, powers and privileges, including "the perpetual right and easement to occupy with pipe lines, water mains, stand pipes, reservoirs and other fixtures and structures used in connection with said water works, the lands of said Roanoke Land and Improvement Company, as they are now occupied by the said pipe lines, water pipes, and other structures above hereby granted, and also the perpetual right of ingress and egress to, from and over the lands of the Roanoke Land and Improvement Company, for the purpose of repairing, renewals, examinations, and all other business pertaining to the occupying, working and maintaining the said pipe lines, water pipes and other structures above."

After the execution of this deed the particular lot with which we are concerned, by mesne conveyances, came to the defendant, the Roanoke Glass Company. Its deed and the intervening deeds recognized the easements which the water company took under its deed of June 17, 1887.

The plat made at the instance of the Roanoke Land and Improvement Company was vacated. The land was replatted and in the new plat Holliday street does not appear. In this the water company had no part, and it continued to maintain and operate a twelve-inch water main along what appeared as Holliday street in the old plat.

During April, 1925, the glass company began the erection of a building which extended across what had been known as Holliday street and over the water company's main. Soon thereafter the water company filed its bill asking that this work be enjoined. On May 9, 1925, a final order was entered in that cause. In it the glass company was perpetually enjoined "from in

any manner erecting or maintaining any structure or do any other thing or act which shall unreasonably interfere with the right of way which the said Roanoke Water Works Company has on the property of the said Roanoke Glass Company * * *."

And the court went on further to decree: "It is further adjudged, ordered and decreed that nothing herein shall be construed as preventing the said Roanoke Glass Company, Incorporated, from maintaining or erecting. any structures on said property over said right of way or easement so long as the said easement is not unreasonably interfered with and so long as the right of ingress and egress to said easement is not unreasonably interfered with."

From this decree there was no appeal. It settled the law of the case to this extent: The glass company may put a building over the water company's main, but that building must be so constructed as not to "unreasonably interfere" with the right of access retained in the reservations noted.

The claim now is that there has been an unreasonable interference.

On October 11, 1926, the water company asked leave of court to file its petition in this cause, praying that a rule issue against the glass company to show cause, if any it can, why it should not be punished for contempt because of its violation of the provisions of the decree of May 9, 1925, and that its right be protected. There was due service of the rule. The defendant appeared and asked for a bill of particulars which was denied. "Thereupon the respondent appeared and denied the allegations of said petition, and that it had and was violating the injunction heretofore awarded to the complainants in this cause."

This stipulation was then made: "It is hereby stipulated and agreed between counsel for plaintiff and defendant that so much of the original record in the chancery cause of *Roanoke Water Works Company* v. *Roanoke Glass Co., Inc.*, pending in the Circuit Court of Roanoke city, as may be desired to be relied upon by either party, is considered in evidence in these proceedings."

The case came on to be heard upon its merits. Evidence was taken in open court and the trial judge in person inspected the premises. On May 13, 1927, a decree was entered which provided in part as follows:

"Upon consideration of all of which the court after having inspected the premises by consent of both parties for reasons set forth in the written memorandum filed herewith and made a part of this decree doth adjudge, order and decree:

"(1) That the complainant requires a space of five feet on each side of the center line of its pipe line extending approximately ten feet high for the reasonable use of the easement it has established in this case and that any permanent construction within these limits is an unreasonable infringement of this easement.

"(2) That the side walls of the building of the respondent, the three columns, one of which is directly over the pipe line, and two of which are within said ten-foot limit, and the inside wall, are unreasonable infringements and that the placing of any material within these limits is also an unreasonable infringement.

"(3) That the concrete floor of the building is not an unreasonable infringement of the easement.

"(4) That the ceiling of the basement which is eight feet eight inches from the floor is not an infringement of the easement.

"(5) That the respondent has the right to place and maintain doors across the openings in the outside walls made as required in paragraph No. 2 of this decree, to be equipped with locks and keys so that means of locking and unlocking the same shall be equally available to the respondent and the complainant, and that such doors so equipped are not an infringement of the easement of the complainant.

"(6) And the complainant indicating its intention to take an appeal to the Supreme Court of Appeals of Virginia from this decree it is further adjudged, ordered and decreed that the operation of this decree be suspended for a period of sixty days from the date of entry of this decree upon the complainant or some one for it entering into a suspending bond before the clerk of this court in the penalty of $100.00 with surety to be approved by the clerk of this court, the said bond to be conditioned as the law directs, and the respondent indicating a like intention, it is adjudged, ordered and decreed that this decree be likewise suspended as to it in its executing a suspending bond in a like penalty of $100.00, conditioned as the law directs."

From this decree an appeal has been allowed.

It is said that no appeal will lie from such a decree for the reason that it is a proceeding criminal in its nature (*B. & O. R. Co.* v. *Wheeling*, 13 Gratt. [54 Va.] 40), and that in such cases to allow an appeal would be, in substance, to hold that some private individual, who was dissatisfied with the amount of punishment inflicted, might petition this court for an increase.

Proceedings for contempt of court are of two classes—those prosecuted to preserve the power and to vindicate the dignity of the court, and those instituted to preserve and enforce the rights of private parties.

The former are criminal and punitive in their nature; the latter are civil and remedial. *In re Nefitt*, (C. C. A.) 117 Fed. 448; *Gompers* v. *Buck's Stove & Range Co.*, 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; *Terminal R. Ass'n of St. Louis* v. *United States*, 266 U. S. 17, 45 S. Ct. 5, 69 L. Ed. 150.

In the case in judgment, plaintiff had small interest in the maintenance of the dignity of the trial court, but it was vitally interested in the preservation and enforcement of those civil rights which it believed had been decreed to it in the injunction suit.

If, however, we stand upon the letter of the statute, we reach the same conclusion. Section 4932 of the Code provides in terms that a writ of error shall lie in contempt cases. We have here the record in the injunction suit, the pleadings and decrees in the contempt proceedings and a certificate of evidence, signed by the trial judge within the time in which such certificates must be signed before a writ of error can be allowed; that is to say, we have every requisite necessary when a writ of error is granted, and this court will treat as a mere inadvertence the endorsement of the fact that an appeal and not a writ of error was allowed.

There are four assignments of error. The first is: "The aforesaid decree of the learned Circuit Court of Roanoke city, complained of, is erroneous in that it determines that the Roanoke Water Works Company requires a space of five feet on each side of the center line of its pipe line extending approximately ten feet high for the reasonable use of the easement."

C. S. Churchill was a witness for the plaintiff. He stated that in his judgment "there should be five feet on each side or thereabout" of the water main as a width necessary for the convenient enjoyment of the

easement. It is to be observed that this witness laid no stress upon the magic distance of five feet. He was of opinion that the width should approximate that distance. Complaint is made of the fact that these five foot strips, under the court's decree, begin not on the outside of the pipe but at its center line, the net result of which is that the reservation is ten and not eleven feet wide. This difference is unimportant and we are willing to adopt the judgment of the trial judge, who, as we have seen, personally inspected the premises.

It is next said: "The decree is further erroneous in determining the concrete floor of the building not to be an unreasonable infringement of the easement. The evidence clearly shows that it is, and will interfere with the free use and enjoyment of the easement."

C. B. Malcolm, a witness for the plaintiff, thus describes this situation: "There is concrete blocks, in segments four feet eight inches wide and about five-foot lengths placed in a line directly over the main through the basement floor, that is, the basement floor has slabs placed over the main four feet eight inches wide and about five feet long."

Holliday street, had it remained a highway, might have been solidly covered with concrete, and the plaintiff would have had no right to complain. These concrete blocks in the basement of the defendant's building are removable, and so access to this main is made, in this respect, easier than it might have been in the street itself. There is no merit in this assignment.

The third assignment is: "The decree is also erroneous in determining the ceiling of the basement, which is eight feet eight inches from the floor, not to be an infringement of the easement. The evidence is clear that a greater height is needed above the surface,

which is now the basement floor, within the building. The learned circuit court must have erroneously had in mind that the ceiling was ten feet or more above the center line of the pipe. The height required is to be measured from the surface and not from the center line of this pipe."

Plaintiff's witness, Churchill, was asked about this. His evidence is:

"Q. What distance in height do you consider, Mr. Churchill, necessary for the reasonable use of the easement of the water company where the glass company building is located?

"A. I think about nine feet or ten feet, not less than nine feet."

From the basement floor to the ceiling of the cellar is eight feet eight inches. This witness thought that nine feet would do. The difference of four inches is too inconsiderable to merit serious consideration.

■ The fourth assignment, which is the last, is the only one that presents any difficulties at all. It is: "The decree is also erroneous in adjudicating that the Roanoke Glass Company, Incorporated, has the right to place and maintain doors across the openings in the outside walls, made as required in paragraph No. 2 of said decree, to be equipped with locks and keys so that means of locking and unlocking the same shall be equally available to it and to the Roanoke Water Works Company, and that such doors so equipped will not be an infringement of said easement."

The easement claimed for this pipe is of considerable length, probably a mile long, and across it many houses might be built. It does not seem reasonable that it should be locked in many cellers, or that the water company should be burdened with the obligation of carrying keys to many basements. In such circum-

stances, it cannot be fairly claimed that it would have an unhindered right to examine and repair this main at pleasure, and this right has unquestionably been reserved.

It is true that the right to repair is one which it is not likely to frequently exercise, and so gates instead of doors may be placed if desired, but they should swing easily and be kept unlocked, and when open they must in no wise narrow the ten-foot right of way given to the plaintiff. That right of way must be kept clear of all obstructions. *Blydenburgh* v. *Ely*, 220 N. Y. 641, 115 N. E. 1034; *Utah-Idaho Sugar Co.* v. *Stevenson*, 34 Utah 184, 97 Pac. 26; *Short* v. *Devine*, 146 Mass. 119, 15 N. E. 148; *McKell* v. *Colliery Co.*, 46 W. Va. 625, 33 S. E. 765.

The decree complained of is modified in the manner just noted, and as modified is affirmed.

*Modified and affirmed.*