# Richmond

LLOYD S. DRAKE v. NATIONAL BANK OF COMMERCE OF
NORFOLK, AND W. L. PARKER, RECEIVER.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning,
Eggleston and Spratley, JJ.

The opinion states the case.

*Nathaniel T. Green* and *Henry Bowden*, for the plaintiff in error.

*Hugh W. Davis*, for the defendants in error.

CAMPBELL, C. J., delivered the opinion of the court.

On the 31st day of January, 1936, the National Bank of Commerce of Norfolk filed in the Court of Law and Chancery of the city of Norfolk the following application for the appointment of a receiver for the Marine Equipment Company, Incorporated, a defunct corporation:

"Your petitioner, National Bank of Commerce of Norfolk, respectfully represents:

"1. That Marine Equipment Company, Incorporated, is a corporation duly chartered under the laws of the State of Virginia, February 9, 1927.

"2. That your petitioner is a creditor of said corporation in an amount exceeding $5,000.00 in excess of securities held by your petitioner.

"3. That the charter of said corporation was annulled on May 31, 1932, because of its failure to pay Registration Fees and Franchise Taxes for two preceding years, and that said corporation was thereby dissolved in the manner required by law.

"4. That the principal office of said corporation was in the City of Norfolk, Virginia.

"Wherefore, your petitioner makes application to this Honorable Court for the appointment of a Receiver or Receivers of and for such corporation, to take charge of the estate or effects thereof, and to collect the debts and property due and belonging to said corporation, with all of the powers and authority provided by law.

"And your petitioner will ever pray, etc."

On the same day an order was entered which sets forth that upon the application of National Bank of Commerce of Norfolk, upon notice accepted by Henry Bowden, Esq., counsel for the former officers and directors of the corporation, W. L. Parker was appointed receiver. The president of the corporation, at the date of its incorporation, was Lloyd S. Drake. This is shown by a telegram (filed in the record) from the State Corporation Commission, dated January 25, 1936. The record fails to show any change in the personnel of the presidency. It is nowhere denied that notice was accepted by Mr. Bowden for the officers of the corporation. That Mr. Bowden, who is an eminent member of the Norfolk bar, has from the inception of this case represented Drake, is conclusively shown by the record; that he had authority to accept notice for Drake is not questioned. In any event, the order of the court is a verity and not subject to a collateral attack.

On the 5th of February, 1936, W. L. Parker, receiver, filed his report, setting forth that due to loss by fire, there had been collected by Drake, from various insurance com-

panies, the sum of $22,344; that Lloyd S. Drake had been president, treasurer and a director of the corporation; that he had made demand upon Drake that he deliver to him the sum of $22,000, and any other corporate property in his possession, and that said demand had been ignored.

Acting upon the recommendation of the receiver, this order was entered by the court:

"Adjudged, ordered and decreed that Lloyd S. Drake do appear before the Judge of this Court at 10 A. M. on the 13th day of February, 1936, and account to the Court for all assets of Marine Equipment Company, Incorporated, coming into his hands or under his control, and to show cause, if any he can, why he should not be adjudged in contempt of this Court for his failure to obey the order thereof entered in this cause on the 31st day of January, 1936;

"Further ordered that a copy hereof be duly served upon the said Lloyd S. Drake."

On the return day of the rule Drake appeared and filed a motion to dismiss the rule, on the grounds that the court was without jurisdiction to enter the order and that it nowhere appeared that Drake had in his possession any money or property belonging to the corporation. This motion was overruled and thereupon Drake filed his answer in the cause, which admitted the collection of the fire insurance money, but claimed that while out hunting he had lost the sum of $18,000.

After the introduction of evidence by the parties, the court entered an order adjudging Drake guilty of contempt of court, and he was ordered confined in jail until he paid to the receiver the sum of money set forth in his answer.

The first assignment of error challenges the jurisdiction of the trial court to appoint a receiver for the corporation, under the provisions of section 3813 of the Code (as amended by Acts 1924, ch. 417), on the mere application of a creditor in an alleged *ex parte* proceeding.

Section 3813, so far as it is relevant, provides:

"When any corporation organized under the laws of this State shall be dissolved in any manner whatever, the circuit court of the county, or the circuit, corporation, or other court having equitable jurisdiction in the city where its principal office is located, on application of any creditor or stockholder of such corporation, at any time, may either continue such directors, trustees, as aforesaid, or appoint one or more persons to be receiver or receivers of and for such corporation, to take charge of the estate or effects thereof, and to collect the debts and property due and belonging to the company, with power to prosecute and defend, in the name of the corporation or otherwise, all such suits as may be necessary or proper for the purpose aforesaid, and to appoint an agent or agents under him or them, and to do all other acts which might be done by such corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation; and the powers of such trustees or receivers may be continued as long as the court shall think necessary for the purposes aforesaid. The court shall have jurisdiction of said application and of all questions arising in the proceedings thereon, and may make such orders and decrees and issue such injunctions therein as justice and equity shall require."

The question raised is one of first impression.

In the petition for a writ of error this is said: "It is not thought that the statute here is unconstitutional, but it is thought that the requirement of notice is implied from the very fact that it is a constitutional requirement * * *."

This *concessum* renders it unnecessary to discuss the constitutionality of the statute in relation to the court's jurisdiction to appoint a receiver, if all legal requirements are observed. Nor are we called upon to enter upon a discussion of the question whether or not notice is required or implied under the language employed in the statute. This conclusion is based on the ground that, in our opinion, Drake, by counsel, accepted notice for the appointment of a receiver, as is shown by the order of the trial court, *supra*.

That Mr. Bowden was authorized to represent Drake is conclusively shown by his action in accepting the notice for the appointment of a receiver, by his subsequent connection with the case and by the silence of the record showing any repudiation of his action.

This brings us to a discussion of appellant's contention that "the receiver to be appointed under section 3813 of the Code must be a receiver appointed in a suit or *inter partes* proceedings for that purpose."

We are unable to concur in that contention. Prior to the enactment of section 3813, courts of equity did not have the power to appoint a receiver for a dissolved corporation, except in a pending suit. This lack of power often led to a situation where the rights of creditors and stockholders were jeopardized by the neglect or refusal of the officers of the corporation to take proper steps for the preservation of the assets of the corporation.

Section 3813 is in keeping with our statute, section 5374, which permits the appointment by the court or clerk of the sheriff as administrator, when it appears that two months have elapsed without the appointment or qualification of a personal representative for the estate of a decedent. The legality of that statute has never been questioned.

That the appointment of a committee for an insane person, even without notice, was not obnoxious to the due process provisions of the State and Federal Constitutions (Const. Va. §11; Const. U. S. Amend. 14), was held by this court in *United States Veterans' Bureau* v. *Smith*, 156 Va. 897, 159 S. E. 161, 163. In that case Mr. Justice Gregory said: "The appointment of a committee for an insane person does not deprive him of his property. It has the effect of preserving and protecting it."

The same is true in a proceeding under section 3813. The corporation being civilly dead, in the absence of a legal administration of its affairs by those entitled to administer them, the court is in express terms authorized to appoint a receiver—not for the purpose of divesting the corporation

of its property—but in order to preserve the assets for those entitled to share therein.

In *Michel v. William Necker, Inc.*, 90 N. J. Eq. 171, 106 A. 449, 450, in construing a statute similar to section 3813, this is said:

"The statutory procedure is in the nature of an equitable *quo warranto.* It is in the nature of a probate proceeding. It is a winding up of the affairs of a deceased corporation through a statutory agent, just as a probate proceeding is a winding up of the affairs of a deceased individual through an agent authorized by statute."

In *Atkins v. Harriman & Company, Inc.* (C. C. A.) 69 F. (2d) 66, it was held: "Such receivers are not merely custodians, like ordinary chancery receivers, but representatives of the corporation, as executors are representatives of a dead man."

In *Clark v. Williard*, 292 U. S. 112, 54 S. Ct. 615, 78 L. Ed. 1160, the court had under consideration this Montana statute (Rev. Codes 1921, § 9303):

"Section 9303. Upon the dissolution of any corporation the district court of the county in which the corporation carries on its business, or has its principal place of business, on application of any creditor of the corporation, or of any stockholder or member thereof, may appoint one or more persons to be receivers or trustees of the corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation and to pay the outstanding debts thereof, and to divide the moneys and other property that shall remain over among the stockholders or members."

Mr. Justice Cardozo, in delivering the opinion of the court, held that the appointment of a receiver under that statute did not rest upon the pendency of a suit.

In *Nunnally v. Strauss*, 94 Va. 255, 26 S. E. 580, 582, Judge Harrison said: "In the case of *Finney v. Bennett*, 27 Gratt. (68 Va.) 365, this court has very aptly likened an insolvent corporation that has ceased to do business to an insolvent decedent's estate, * * *."

There is no merit in the first assignment of error.

The second assignment of error challenges the action of the court in finding Drake guilty of contempt and confining him in jail until the payment to the receiver of the sum of money collected by him.

In support of the contention that the court erred in adjudging Drake guilty of contempt, these conclusions are relied upon:

"(1) That this is a criminal or quasi criminal charge against Drake and is to be governed by the principles and is to be determined under the principles of criminal law and procedure.

"(2) That under criminal law and procedure, Drake, in this case, is presumed to be innocent until his guilt is established beyond a reasonable doubt.

"(3) That the burden is on the prosecution to show the guilt of Drake beyond all reasonable doubt.

"(4) That this burden never shifts but remains on the prosecution throughout the entire case.

"(5) That in determining the guilt of the prisoner, the court is not at liberty to indulge in surmise, supposition or conjecture and should not guess as to what are the facts when it comes to passing upon the liberty of a man."

■ This court, in numerous cases, has dealt with the question of contempt and the rule is well settled in Virginia that contempt proceedings are of two classes. The last case upon the subject is *Roanoke Water Works Co.* v. *Roanoke Glass Company*, 151 Va. 229, 144 S. E. 460, 462. In that case Mr. Justice Holt said:

"Proceedings for contempt of court are of two classes—those prosecuted to preserve the power and to vindicate the dignity of the court, and those instituted to preserve and enforce the rights of private parties. The former are criminal and punitive in their nature; the latter are civil and remedial. *In re Nevitt* (C. C. A.) 117 F. 448; *Gompers* v. *Buck's Stove & Range Co.*, 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; *Terminal R. Ass'n*

*of St. Louis* v. *United States*, 266 U. S. 17, 45 S. Ct. 5, 69 L. Ed. 150."

The case at bar falls within the second class and by the weight of authority the burden of proof is on Drake to show his inability to comply with the order of the court. *Cutting* v. *Van Fleet* (C. C. A. 9th Cir.) 252 F. 100; 22 A. L. R. 1266; 31 A. L. R. 652; 76 A. L. R. 396.

In the trial of the contempt proceeding this principle seems to have been recognized, since the record shows that Drake, who testified in his own behalf, was the first witness called to testify in the case. The evidence was taken *ore tenus* before the court, and therefore, the conclusion on the facts stands upon the same plane as the verdict of a jury. *Eastern Shore, etc.* v. *Belote*, 138 Va. 707, 123 S. E. 372; *Birdsong & Co.* v. *American Peanut Corporation*, 149 Va. 755, 141 S. E. 759.

The case made out by Drake is fully stated in the answer filed by him and is as follows:

"(1) That as alleged in the petition and application in this cause, Marine Equipment Company, Incorporated, was dissolved on May 31st, 1932, by an order of the State Corporation Commission which revoked its charter. Said corporation therefore ceased to do any business on said day and in law this respondent is advised the assets of said corporation became the property of its stockholders in said corporation subject to whatever debts said corporation at that time owed. Since that date all the business has been conducted, therefore, in the contemplation of law, as a partnership. Said respondent further says that he did not have in his hands on the date of the appointment of the Receiver in this cause, any property or assets of said corporation which belong to or which it owned on the 6th day of May, 1932.

"(2) Respondent further says that at the time the Receiver was appointed in this cause he, the Respondent, did not have and has not since had in his possession or under his control any assets belonging to the said corporation

or any such property belonging to said corporation either at the time of its dissolution or subsequent thereto, or any property or assets which belonged to the successor in business of said corporation after May 6th, 1932.

"(3) There had previous to said partnership come into the hands of this Respondent certain moneys under the following circumstances:

"The successors in business, Lloyd S. Drake and C. S. Phillips, of the corporation above mentioned, suffered a fire loss in said business on account of which certain insurance companies paid to them a net amount of $20,575.00, said payments being in the form of drafts.

"It was agreed between your Respondent and the said Phillips that he should collect the proceeds of said drafts in actual cash and hold the same without deposit, to be disposed of afterwards in liquidating the debts of said concern. When the greater portion of said drafts arrived, your Respondent was in New York City and he, while in said city, in compliance with his understanding with C. S. Phillips, collected said drafts in cash and took physical possession of said cash and kept the same in his person; $19,500.00 of said cash was in denominations of five hundred dollar bills, and $1,075.00 of said cash was in smaller bills of varying denominations. The $1,075.00 was kept in a separate parcel from the $19,500 which itself was in a parcel held together by a rubber band. On Saturday, the 18th day of January, 1936, Respondent returned to Norfolk, reaching here about 10:00 o'clock on that day. He went to his office and at once notified Phillips that he had returned and requested him to come to the office. At about 1:30 o'clock P. M. on that day, Phillips came to the office and was informed by this respondent that he had the cash derived from said drafts, on his person and made an engagement with him, it being then after banking hours, to meet him there Monday morning and go with him to the bank of the National Bank of Commerce of Norfolk, Virginia, for the purpose of adjusting and set-

tling their indebtedness to said bank. On Monday morning, the 20th of January, 1936, Mr. Phillips met your Respondent at said office and to his surprise Respondent learned for the first time that the banks were closed that day on account of some legal holiday. The visit to the bank was therefore postponed to take place the next day. On the morning of that day, Monday, Respondent paid from the proceeds in his hands the following debts due by the business:

"To W. J. Callan, $500.00; to J. L. Spence, $500.00; to Thos. A. Bryan & Company, $475.00; to J. D. Apperson, $250.00; to the telephone company, $35.00, and to Gulf Refining Company, $15.00; to Henry Bowden, $100.00. In addition to that Respondent had paid out in expenses for various trips for the concern, $200.00, which he deducted from said money of the Respondent. Thinking and believing that after the liquidation of the debts of the concern there would be coming to him at least $500.00, Respondent deducted that much more from the moneys in his possession and devoted it to the payment of his personal bills and the bills of his family. This left in your Respondent's possession, $18,000.00 in one roll held together by a rubber band.

"On the afternoon of Monday, the 20th day of January, 1936, Respondent, accompanied by a friend, Anthony Reibaldi, of Portsmouth, Virginia, who had suggested the trip, went bird hunting in Norfolk County some few miles from Portsmouth, and the said Respondent having at the time in his possession and on his person for safe keeping the $18,-000.00 in bills of five hundred denominations hereinabove last mentioned, at the time. At about dusk on that evening when Respondent and his companion were concluding their hunting and were returning to Respondent's automobile, Respondent missed from his pocket the $18,000.00 above mentioned and discovered that the same had disappeared. Respondent and his companion searched as best they could for said money that evening and returned the next morning at sunrise and devoted the rest of that day also to searching for said money as well as a part of Wednesday, the 22nd

of January, 1936, the following day, having also enlisted the aid of other trustworthy persons in the neighborhood in said search. Said search, however, proved unavailing and your Respondent does not know what became of said money beyond the fact that the same was lost.

"Your Respondent also adopted other means in attempting to recover said money as will more fully appear from the evidence.

"On Wednesday Respondent notified his associate, Mr. S. C. Phillips, of the loss of said money and on Thursday notified the National Bank of Commerce."

Anthony Reibaldi, Drake's companion on the hunting trip, was introduced as a witness and testified in detail regarding the hunt, his evidence practically dovetailing that of Drake.

Several witnesses testified as to the good reputation of Drake for truth and veracity.

Counsel for Drake contend that he is an uncontradicted and unimpeached witness, and therefore, under the doctrine of *Epperson* v. *DeJarnette*, 164 Va. 482, 180 S. E. 412, 413, his evidence is conclusive of the matter. The rule laid down in the above case is as follows:

"While the jury is the judge of the weight of testimony and the credibility of witnesses, it cannot arbitrarily disregard the uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with other facts and circumstances appearing in the record, even though such witnesses are interested in the results of the litigation."

In a technical sense Drake stands as an unimpeached witness, but in view of the evidence on behalf of the receiver (direct and circumstantial), it is going too far afield to say that he stands as an uncontradicted witness. All that the record shows as to the loss of the money is the statement of Drake that he lost it. Reibaldi merely repeats the self-serving declaration made by Drake when he claims to have discovered his loss. This is not corroboration. On the other hand, it clearly appears that after Drake collected the money

in the manner stated by him, he was meticulous in his endeavor to show that he had this large sum of money on his person. He informed a Mr. Welton who occupied the drawing room with him on his return from New York to Norfolk, that he had a large sum of money upon his person. On the way to the hunting grounds he showed Reibaldi the package of money and permitted Reibaldi to handle it. He gave as his reason for showing the money to Reibaldi, that on a previous occasion Reibaldi had shown him a "roll" of money. His conduct was unusual and only one inference can be drawn from the display of such a large sum of money, and that inference is that Drake was paving the way to establish the fact of his possession, in the event the money was afterwards lost. Another pregnant fact is that, though Phillips was an alleged partner in the business and entitled to share in the proceeds, Drake did not notify him of the loss until two days after it occurred.

Phillips, when testifying as a witness, contradicted the statement of Drake that he agreed to the collection of the insurance money in cash and stated that the drafts were to be converted into "certified checks or cashiers' checks." Phillips further stated that when he first met Drake, after his (Drake's) return to Norfolk, this incident occurred:

"We sat down to have lunch and Drake then mentioned that he had this money in currency, and it worried me, any idea of an amount of that kind, and anything might happen, and I cautioned him to be extremely careful and mentioned the question of a safe deposit box. The answer came back that the banks were closed and I said, 'What can we do? You had better give it to me to take care of. I won't lose it.' I said, 'I won't feel satisfied until this thing is handled properly.' Then I said, 'What are you going to do this afternoon?' Then he said, 'I am going hunting,' I said 'Why don't you do something, at least give me a part of that money to take care of and I will find some place to put it where it will be safe?' but he would not agree to that, and then as

far as seeing the money, I really saw just the edge of the bills."

If this statement of Phillips is true, and the court sitting as a jury has said it is true, it would indicate that Drake had constituted himself sole custodian of the money, instead of being willing to share the responsibility of its safety with Phillips.

Drake also was contradicted by the witness Whitehurst, vice-president of the Bank of Commerce, in regard to the requested assignment to the bank of the proceeds of the insurance to protect the bank's loan to the Marine Equipment Corporation.

Standing alone, the evidence of Drake that he lost the money in the manner detailed is apparently not inherently incredible, but when the record is further examined and the whole matter weighed, we are unable to say that the trial court erred in its view that the statement of Drake was unbelievable.

The third assignment of error is:

"It will appear from the record that all the proceedings in this cause after and including the rule against your petitioner and including the order and judgment finding your petitioner guilty of contempt were in chancery, and the last mentioned order itself was entered in the chancery order book, instead of the law order book."

There is no merit in this assignment of error.

In *Roanoke Water Works Co.* v. *Roanoke Glass Company*, *supra*, a similar question was dealt with and disposed of thus:

"It is said that no appeal will lie from such a decree for the reason that it is a proceeding criminal in its nature. (*B. & O. R. Co.* v. *Wheeling*, 13 Gratt. (54 Va.) 40), and that in such cases to allow an appeal would be, in substance, to hold that some private individual, who was dissatisfied with the amount of punishment inflicted, might petition this court for an increase.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"In the case in judgment, plaintiff had small interest in the maintenance of the dignity of the trial court, but it was vitally interested in the preservation and enforcement of those civil rights which it believed had been decreed to it in the injunction suit.

"If, however, we stand upon the letter of the statute, we reach the same conclusion. Section 4932 of the Code provides in terms that a writ of error shall lie in contempt cases. We have here the record in the injunction suit, the pleadings and decrees in the contempt proceedings and a certificate of evidence, signed by the trial judge within the time in which such certificates must be signed before a writ of error can be allowed; that is to say, we have every requisite necessary when a writ of error is granted, and this court will treat as a mere inadvertence the endorsement of the fact that an appeal, and not a writ of error, was allowed."

We find no error in the judgment of the trial court, and it is therefore affirmed.

*Affirmed.*