# Richmond

ROBERT NICHOLAS *v.* COMMONWEALTH OF VIRGINIA.

April 21, 1947.

Record No. 3198.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley
and Buchanan, JJ.

The opinion states the case.

*A. L. Pitts, Jr.,* and *John B. Boatwright,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *G. Stanley Clarke, Assistant Attorney General,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

Nicholas has been found guilty of contempt of court and sentenced to twelve months in jail for violating a decree of the court enjoining him from having alcoholic beverages on his premises. He seeks reversal of the judgment of conviction on the ground that the evidence was not sufficient to establish his guilt.

The injunction decree was entered October 19, 1942, on a bill for that purpose filed by the Commonwealth under section 56 of the Alcoholic Beverage Control Act (Acts 1934, chap. 94, p. 100 *et. seq.,* Code 1942, Michie, sec. 4675(56)). That section provides that a suit in equity may be maintained in the name of the Commonwealth "to abate and perpetually to enjoin" a nuisance, as defined in section 55 of the Act (Code, Michie, sec. 4675(55)), which provides in its first sentence that "all houses, boat-houses, buildings * * * * and places of every description including drug stores, where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law by any scheme, or device whatever, shall be held, taken and deemed common nuisances."

Robert Nicholas and his wife and children were made parties defendant to the injunction suit, a guardian *ad litem* was appointed for the children and an answer filed by him, and the injunction decree recites that the cause was heard on the pleadings, and upon the appearance of the respective parties by their attorneys, and upon oral evidence; and it was thereupon ordered that Robert Nicholas and the other defendants, and their servants, agents and employees, be "per-

petually enjoined and restrained from manufacturing, storing, selling, dispensing, giving away, or using alcoholic beverages upon the premises described in the said bill of complaint, * * * ."

February 27, 1946, a search warrant was issued for the premises of Robert Nicholas, which resulted in finding thereon and seizing a quantity of alcoholic beverages. The Commonwealth thereupon filed a petition in said equity suit setting forth the granting of the injunction and the subsequent finding of alcoholic beverages in violation thereof, and asking for a rule against Robert Nicholas and Leroy Wilson, his agent and servant, to show cause why they should not be dealt with for contempt.

An order was entered requiring Nicholas and Wilson to appear on March 18, 1946, to answer the rule. Service was had on Wilson, who appeared, and the matter was continued for service on Nicholas. At the calling of the case on June 25, 1946, counsel for Nicholas and Wilson moved to continue for the absence of Wilson, which was overruled and the case was thereupon heard by the court *ore tenus* on the evidence of witnesses for the Commonwealth and defendant. Upon the hearing the court held· that Nicholas and Wilson had violated the injunction and were guilty of contempt and fixed their punishment at confinement in jail for twelve months. From that judgment this writ of error was granted to Nicholas.

There were three witnesses, two for the Commonwealth and the defendant for himself. The two witnesses for the Commonwealth were Duggan and Gaulding, officers of the A. B. C. Board. They testified that they and Wood, another A. B. C. officer, procured the search warrant and searched the premises of Robert Nicholas, consisting of a ·combined store and restaurant, a separate dwelling and a stable and garage combined. In the restaurant they found two bottles of beer in an icebox. In the stable-garage Wood found hidden under a plank two bottles, one containing a small quantity of whiskey and the other a small quantity of wine. In the residence of Robert Nicholas they found

on the dining room table a bottle about half full of gin, which was claimed by Leroy Wilson who was there on the premises and said he was an employee of Robert Nicholas. Duggan and Gaulding then went upstairs and found six or seven one-half pints of whiskey stored in the ceiling of a closet, which was in the room occupied by Robert Nicholas. They testified they did not find Nicholas or his wife on the premises and that they did not see them that day, but Wilson told them Nicholas had gone to Baltimore after his wife. That night after the search the officers went to the bus terminal in Richmond in an effort to apprehend Nicholas, but did not see him.

Nicholas, the defendant, testified that he was not at home at the time of the search, but was in Baltimore where he had gone to get his wife who had been there for eight weeks; that when he got back home he found the premises had been searched and the ceiling in his wife's room had been torn down. He denied that he was the owner of the whiskey, beer, wine or gin, and said he had left Wilson in charge when he went to Baltimore; that he knew nothing about the said spirits or beer, "but that he was responsible for any ardent spirits found in his room."

He said that there were frequently as many as fifty guests in his restaurant at one time in the evening and it was not unusual the next day to find hidden about the premises bottles of wine or whiskey partly consumed; that he served meals, sold soft drinks and had a juke box by which the guests danced.

He testified that sometime previous to the search he had gone to Baltimore after his wife and had come home on the evening of February 27, but did not see any of the officers; that Leroy Wilson, who was in the place when it was searched, had been at court at the April term but had since got in trouble with a woman and he did not know where Wilson was on the day of the trial; that Wilson had not been at his place for several days and he thought he had left the State.

The power of the court to issue the injunction of

October 19, 1942, is clear. It was authorized, as we have seen, by section 4675(56) of the Code. The court had jurisdiction of the subject matter and of the parties. Nicholas was before the court when the injunction was granted. It was suggested in oral argument, but not in defendant's brief, that section 4675(56) of the Code is in conflict with section 4675(61),(c), which permits possession of lawfully acquired alcoholic beverages by a person in his residence for the personal use of himself, his family, servants or guests. The two sections are, of course, to be read together and there is no conflict between them. Section 4675(61),(c) permits alcoholic beverages lawfully acquired to be lawfully used. Section 4675(56) provides a means to prevent alcoholic beverages, whether lawfully or unlawfully acquired, from being unlawfully used, and to abate the nuisance caused by such unlawful use. But if the argument were valid, it would not help the defendant here. His relief would have had to come by appeal from the injunction decree, or afterwards by motion to dissolve the injunction if he could show a proper cause for it under the terms of the section.

As pointed out in *Robertson* v. *Commonwealth*, 181 Va. 520, 25 S. E. (2d) 352, 146 A. L. R. 966, there is a vast difference between a judgment that is void and one that is merely erroneous; and in the opinion in that case it is said (p. 537):

"'Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law.' Freeman on Judgments, 5th Ed., section 357, p. 744.

"Consequently, the authorities are in accord that where the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt. Such order, though erroneous, is lawful within the meaning of contempt statutes until it is reversed by an appellate court." And see, *Deeds* v. *Gilmer*,

162 Va. 157, 174 S. E. 37; 12 Am. Jur., Contempt, pp. 407-8; *United States* v. *United Mine Workers*, —— U. S. ——, 67 S. Ct. 677.

The power of courts to punish for contempt is inherent and an important and necessary arm in the proper discharge of the functions committed to them by fundamental law (*Carter* v. *Commonwealth*, 96 Va. 791, 32 S. E. 780, 45 L. R. A. 310; *Wells* v. *Commonwealth*, 21 Gratt. (62 Va.) 500; Va. Rep. Ann. 893, note p. 896). "There has been general recognition of the fact that the courts are clothed with this power, and must be authorized to exercise it without referring the issues of fact or law to another tribunal or to a jury in the same tribunal." *Gompers* v. *Bucks Stove, etc., Co.*, 221 U. S. 418, 31 S. Ct. 492, 501, 55 L. Ed. 797.

It is a power that may be regulated by the legislature (Va. Const., sec. 63), but only in a way and to an extent "not inconsistent with the exercise by the courts, with vigor and efficiency, of those functions which are essential to the discharge of their duties." *Yoder* v. *Commonwealth*, 107 Va. 823, 829, 57 S. E. 581.

Statutory sanction for the power here exercised is found in Code, Michie, section 4521, providing that courts may punish summarily for contempt "only in the cases following:
" * * * * *

"Fifth. Disobedience or resistance of an officer of the court, juror, witness, or other person to any lawful process, judgment, decree, or order of the said court."

The jurisdiction of the court to enter the injunction order, and its power to punish for a violation of it, being established, there remains only the question whether the evidence, which we have fully stated above, is sufficient to support the finding that the defendant violated the terms of the injunction by having possession of alcoholic beverages contrary to the terms of the injunction order.

The Commonwealth agrees that the guilt of the defendant must be proved beyond a reasonable doubt. The proceeding is criminal or *quasi* criminal in its nature. "Mere

preponderance of evidence is not sufficient to convict, but the offense charged must be proved beyond a reasonable doubt." *Kidd* v. *Virginia Safe Deposit, etc., Corp.*, 113 Va. 612, 614, 75 S. E. 145.

As stated, the evidence was heard by the trial judge *ore tenus*. His finding settles any conflict in the evidence. His conclusion stands upon the same plane as a verdict of a jury. It cannot be disturbed unless it is plainly wrong, or without evidence to support it. *Malbon* v. *Davis*, 185 Va. 748, 40 S. E. (2d) 183; *Drake* v. *National Bank of Commerce*, 168 Va. 230, 190 S. E. 302, 109 A. L. R. 1517.

The finding of the whiskey on the defendant's premises does not of itself create a legal presumption that he was its owner or possessor, or alone make a *prima facie* case of guilt. In *Sutherland* v. *Commonwealth*, 171 Va. 485, 494, 198 S. E. 452, we said: "It is merely evidence of a circumstance tending to show guilt, and it is to be considered by the jury and given such weight as they may deem proper in connection with other pertinent and material facts and circumstances in the case. . It may bear a natural relation to the fact that the owner or occupant of the land had knowledge of its existence; but it is only an evidential fact and not a *prima facie* presumption. The possession contemplated by the statute as a crime is a guilty possession. He must have a connection with the ownership."

In *Powers* v. *Commonwealth*, 182 Va. 669, 30 S. E. (2d) 22, we repeated that the mere finding of the liquor on the premises occupied by the defendant and another created no presumption of law that he was in possession of it, either individually or jointly with such other person and "there was no positive evidence of the possession of it by him."

Here not only was the whiskey found on the premises of the defendant; the major part of it, six or seven pints, was found stored in the ceiling of the closet in the room that he occupied, and there was positive evidence of the possession of it by him, coming from his own mouth. He said on his oath as a witness "that he was responsible for

any ardent spirits found in his room." There is nothing in the record to indicate that this statement meant other than what it said—no explanation or qualification of it that would prevent the application of it to the whiskey that was stored in the ceiling of the closet of his room. The trial judge heard him testify and was in better position than we are to determine what he meant by that statement. The trial judge saw the witnesses and could weigh and analyze their testimony against the background furnished by the suit in which the petition was filed on which the rule was issued (cf. *Lindsey* v. *Lindsey*, 158 Va. 647, 164 S. E. 551; *Branch* v. *Branch*, 144 Va. 244, 132 S. E. 303). Should we say that the judgment of the trial court is without evidence to support it, we would arbitrarily say that the court had drawn the wrong inference from this admission made by the defendant, without support for our own conclusion from anything that appears in the record. The presence of the whiskey stored in the ceiling of the closet in the room of the defendant was "evidence of a circumstance tending to show guilt," to be considered by the court and given such weight as it deemed proper in connection with other pertinent and material facts and circumstances in the case (*Sutherland* v. *Commonwealth, supra*). A pertinent and material circumstance was the admission by the defendant that he was responsible for any whiskey found in his room. His general denial of ownership or knowledge was not supported by any fact or circumstance other than his own unsupported statement that he had left Leroy Wilson in charge and had gone to Baltimore sometime previous to the search (whether that day or some other day he did not say) after his wife and was to come home on the 27th of February, the day of the search, to bring his wife back, and that he did come home that evening, but did not see any of the officers. The same Leroy Wilson had claimed the gin on the dining room table but did not claim the six or seven pints in the ceiling of the closet in defendant's room, and defendant offered no suggestion as to how it got there, other than his statement that he was responsible for

any found in his room. On the record before us we cannot say that the judgment of the trial judge is plainly wrong or without evidence to support it.

The injunction order of October 19, 1942, enjoined the defendants from removing any alcoholic beverages then on said premises until further order of the court. It was suggested in oral argument that it was necessary for the Commonwealth to prove that the whiskey found in the search of February 27, 1946, was not there when the injunction was granted, and it had not so proved. Such contention was not made in the trial court, so far as the record shows. It was not relied on or mentioned in defendant's brief. "In general, new matter, points or defenses not made or relied on in the trial court, cannot be raised for the first time in the appellate court." Burks Pl. & Pr., 3rd Ed. 768; *Southern Ry. Co.* v. *Thompson, ante,* p. 106, 41 S. E. (2d) 456. Moreover, the Commonwealth was not required to prove this negative and establish the non-existence of an improbable reason for the presence of the whiskey (1 Greenleaf, 16th Ed., sec. 74). That was matter of defense under the facts and circumstances shown, and the defendant made no claim that the presence of the whiskey was to be accounted for on that ground. Nor is it to be supposed that the trial court might have convicted him for being in possession of alcoholic beverages left there by its own order more than three years before. It is not indicated that the defendant might have been that meticulous to obey.

We find no prejudicial error and the judgment is affirmed.

*Affirmed.*