# Richmond

## WILLIAM LEE EDDENS v. DELLA EDDENS.

November 22, 1948.

Record No. 3398.

Present, All the Justices.

*Callom B. Jones*, for the appellant.

*Jesse M. Johnson*, for the appellee.

Eggleston, J., delivered the opinion of the court.

In 1936 Della Eddens filed a suit for divorce in the court below against William Lee Eddens. During the pendency of the suit orders were entered requiring the defendant husband to pay to the plaintiff's counsel $100 on account of fees for services rendered in the proceeding. On November 19, 1937, a final decree was entered granting the wife a divorce *a vinculo* on the ground of desertion. By the terms of the decree the defendant was ordered to pay to the plaintiff $131.80, the balance of accrued court costs, and to her attorney the sum of $200 for the balance of his fee

for services in the cause. There was no provision for the payment of alimony. The decree closed with the usual direction that the cause "be striken from the docket and the papers hereof placed among the files for ended causes."

On June 12, 1947, on motion of the plaintiff, a decree was entered reinstating the cause on the docket. It recited that representation had been made to the court that the defendant had failed to abide by the previous decrees requiring him to pay counsel fees and court costs, and consequently he was ordered to appear before the court on June 25, 1947, at 9:30 a. m., and show cause why he should not be adjudged in contempt of court and dealt with accordingly.

On November 24, 1947, a decree was entered, reciting that the defendant had appeared in person in answer to the order to show cause, and that after several continuances the matter had been heard and determined. The decree directed that the defendant pay within ten days the accrued attorney's fees of $300, and the balance of court costs of $61.80. It further directed that upon the failure of the defendant to pay the sums of money within the time specified, a *capias* should be issued for his arrest and imprisonment. To review this decree the present appeal has been allowed.

The record before us does not disclose what defense, if any, the defendant made in response to the order to show cause which was served on him. He filed no formal answer thereto, nor are we furnished with the evidence which was taken at the hearing.

In the assignments of error it is said that the lower court refused to allow the defendant "to file a written answer setting forth the reasons why he was not in contempt of court" for his failure to make the payments, and refused "to hear evidence *ore tenus*" on the matter before entering the decree complained of. We find nothing in the record to justify either of these allegations. It is apparent that the defendant had ignored the previous orders of the court without legal justification or excuse. The effect of the decree complained of was to give the recalcitrant husband a further period of

ten days within which to purge himself of contempt by making the required payments, or else go to jail.

In substance his defense before us is that the court is now powerless to compel him in this manner to comply with its mandate.

This brings us to the main question presented in the case, May a court of equity, in a divorce proceeding, enforce its decrees for the payment of counsel fees and court costs by the process of contempt?

The argument of the appellant husband is that a decree for the allowance of counsel fees and court costs is a mere judgment "requiring the payment of money," within the purview of Code, section 6459; that it is enforceable by execution under the provisions of Code, section 6460, and not by the process of contempt, because, he says, attachment for failure to pay such allowances would be imprisonment for debt which is not permitted under our law.

The precise question has not been previously presented to this court. However, the power and authority of a court of equity in a divorce proceeding to enforce its decrees for the payment of alimony by attachment for contempt has been firmly established by our previous decisions. Typical of such cases are *West* v. *West*, 126 Va. 696, 101 S. E. 876; *Branch* v. *Branch*, 144 Va. 244, 132 S. E. 303; *Lindsey* v. *Lindsey*, 158 Va. 647, 164 S. E. 551.

As we said in *Nicholas* v. *Commonwealth*, 186 Va. 315, 321, 42 S. E. (2d) 306, 309, "The power of courts to punish for contempt is inherent and an important and necessary arm in the proper discharge of the functions committed to them by fundamental law." See authorities there cited, and also *Branch* v. *Branch*, *supra* (144 Va., at pages 251, 252).

In *West* v. *West*, *supra* (126 Va., at page 699), we held that imprisonment in a contempt proceeding for refusal to pay alimony was not imprisonment for debt, which has been abolished in this State, because "the imprisonment is not ordered simply to enforce the payment of the money,

but to punish for the wilful disobedience of a proper order of a court of competent jurisdiction."

Moreover, we also pointed out in that case (126 Va., at page 699) that a decree for alimony is essentially different from an ordinary debt or judgment for money. See also, *Branch* v. *Branch, supra* (144 Va., at page 251); *McKeel* v. *McKeel*, 185 Va. 108, 114, 37 S. E. (2d) 746, 749.

The power and authority of a court of equity in a divorce proceeding to enforce its decrees for the payment of counsel fees and suit money by the process of contempt has frequently been before the courts in other jurisdictions. Those courts which have considered the matter are in accord in holding that allowances to the wife for counsel fees and suit money, like allowances for alimony, may be enforced by contempt proceedings. See 17 Am. Jur., Divorce and Separation, section 583, p. 460; 27 C. J. S., Divorce, section 261, p. 1045; *Miller* v. *Baer*, 114 W. Va. 566, 172 S. E. 612; *Orr* v. *Orr*, 141 Fla. 112, 192 So. 466; *Van Dyke* v. *Van Dyke*, 125 Ga. 491, 54 S. E. 537; *Blackburn* v. *Blackburn*, 201 Ga. 793, 41 S. E. (2d) 519; *Davis* v. *Davis*, 15 Wash. (2d) 297, 130 P. (2d) 355; *Ex parte Davis*, 101 Tex. 607, 111 S. W. 394, 17 L. R. A. (N. S.) 1140; *O'Neil* v. *O'Neil* (Tex. Civ. App.), 77 S. W. (2d) 554, 558; *Ex parte Risner*, 67 Cal. App. (2d) 806, 155 P. (2d) 667; *Sessions* v. *Sessions*, 178 Minn. 75, 226 N. W. 211, 701; *Jensen* v. *Jensen*, 119 Neb. 469, 229 N. W. 770; *Boardman* v. *Carey*, 62 App. D. C. 152, 65 F. (2d) 600.

These authorities reason that allowances for counsel fees and suit money are of the same nature and are governed by the same general principles as allowances for maintenance and support; that allowances for counsel fees and costs are incidental to and a part of the alimony decreed to be paid to the wife, in that they are a means of enforcing the performance of a legal duty owing by the husband to the wife, in which the public has an interest; and that such allowances, like alimony, are not mere debts or money judgments* with-

---

*In Missouri, contrary to the ruling in Virginia, and against the great weight of authority, an allowance for alimony is a money judgment or debt, the payment of which cannot be enforced by contempt proceedings. *Harrington* v. *Harrington*, 233 Mo. App. 390, 121 S. W. (2d) 291, 293.

in the meaning of the constitutional and statutory provisions prohibiting imprisonment for debt.

The decision of the highest court of West Virginia in *Miller* v. *Baer, supra,* is of particular interest, because the precise question now before us was there involved, and the relevant statutes there discussed are practically the same as those in Virginia.

In that case, after the wife had been granted a divorce *a vinculo* and permanent alimony, the husband filed a petition for reduction of alimony which was sharply contested both in the lower court and on appeal.

Baer, Judge of the Domestic Relations Court, awarded the wife $150 attorney's fees and $50 suit money for services rendered in the matter of the husband's petition for the reduction of alimony, but refused to enforce collection of such items by a contempt proceeding. Upon the wife's application the Supreme Court of Appeals awarded a writ of mandamus, directing the judge to enforce by process of contempt its decree requiring the husband to pay attorney's fees and suit money.

In discussing the nature of alimony the opinion points out that "it is not considered a debt within the meaning of the statutes and constitutions which prohibit imprisonment for debt," nor is it a money decree within the meaning of section 38-3-1 (similar to Virginia Code, section 6459), providing that a decree for "the payment of money" is a "judgment," or within the meaning of section 38-3-2 (similar to Virginia Code, section 6460), providing for the enforcement by execution of a decree "requiring the payment of money." Under these two latter sections, the opinion says, courts of equity do not have the power to enforce decrees for the payment of money by process of contempt.

The court then cogently reasons that the same principles apply to an award for counsel fees and suit money:

"Without a preliminary award to the wife for the purpose of carrying on or defending suit, she would be unable to develop properly her side of the cause. Such items are therefore essential to a proper award of alimony upon

the granting of a divorce. They are bound up in the preliminary award. Why retain the right to enforce a decree for alimony, if the wife, in the first instance, be denied the right to so enforce the advancement of counsel fees and suit costs? Such fees are incidental to and part of the alimony decreed to be paid the wife. At the time of the divorce, the wife was awarded $150 per month for alimony, or maintenance. It did not contemplate further litigation. Now the husband seeks to have the award decreased. The wife, to protect her interests, must have funds with which to employ counsel and pay court costs. Not to provide her with such funds might possibly defeat her right to alimony. If essential to the obtaining of alimony, it is just as necessary to protect such right, once it is acquired. It is in fact a part of the maintenance, and therefore enforceable by process of contempt." (172 S. E., at page 613.)

We agree with the reasoning in this case which is a complete answer to the argument on behalf of the appellant husband on the main question involved in the present appeal.

The principles there announced are supported in the other decisions to which we have referred.

In *Van Dyke* v. *Van Dyke, supra*, in upholding the power of the lower court to enforce the collection of counsel fees by the process of contempt, it is said: "The fees allowed were incidental to and part of the permanent alimony decreed to be paid to the wife." (54 S. E., at page 538.)

And so, too, in *Jensen* v. *Jensen, supra*, in sustaining the same power, it is said: "These awards (of counsel fees) were but means of enforcing the performance of a legal duty owing by the husband to the wife, in which the public has an interest. The power both to enter and to enforce such orders is inherent in the court." (229 N. W., at page 771.)

Whether the decree directs the payment of counsel fees to the wife or to her attorney, the allowance is primarily for the benefit of the wife. 27 C. J. S., Divorce, section 216, p. 911.

In *Sessions* v. *Sessions, supra,* a recalcitrant husband was imprisoned in a contempt proceeding for failure to pay counsel fees allowed to his wife in a divorce suit. On appeal he contended that the effect of the contempt decree was to imprison him for debt, contrary to the provisions of the State Constitution. In disposing of this contention the court reaffirmed its prior holding[1] in a contempt proceeding, "That a person convicted of contempt, who fails to comply with the judgment imposed therefor, may be coerced to do so by imprisonment without infringing this constitutional provision, whether the judgment directs the payment of money or the doing of some other act, has been settled too long and too firmly to require further discussion or the citation of authorities."

In *Park* v. *Park,* 80 N. Y. 156, 160, it was held that refusal to pay court costs as directed by a divorce decree was punishable by attachment in a contempt proceeding.

■ Moreover, the appellant's contention that allowances for counsel fees and court costs are mere debts or judgments, the payment of which cannot be enforced by contempt proceedings at any time, either pending the suit or after a final decree, is partly answered by the provisions of Code, section 5107. This section reads:

"The court in term or the judge in vacation may, at any time pending the suit, in the discretion of such court or judge, make any order that may be proper to *compel the man to pay any sums necessary for the maintenance of the woman and to enable her to carry on the suit, * * *.*" (Italics supplied.)

Since the contempt decree complained of was not entered "pending the suit," it, of course, is not within the purview of the section. But the statute is a legislative recognition of the principle that "sums necessary for the maintenance of the woman" and those needed "to enable her to carry on the suit" are in the same category, and that pending the cause the court may by the process of contempt "compel the man to pay" such allowances.

---

[1] *Campbell* v. *Motion Picture Machine Operators Union,* 151 Minn. 238, 186 N. W. 787, 789.

■ We are of opinion that the lower court had the inherent power to punish the defendant husband in a contempt proceeding for his wilful refusal to obey its lawful decrees directing him to pay counsel fees and court costs incurred by his wife in the divorce suit.

Legislative recognition of this inherent power is found in Code, section 6309, which provides that, "The judge of every court having common-law jurisdiction in civil cases shall have the same power in vacation that *he has in term by process of contempt to punish disobedience of and enforce obedience to any decree or order made in a cause in his court.  * * *"*  (Italics supplied.)

Next, it is said that inasmuch as the divorce decree had become final, the court had no authority to reinstate the cause on the docket for the purpose of instituting and hearing the contempt proceeding.

■ Technically the reinstatement of the cause on the docket for the purpose stated was not proper, nor was it necessary.  But the fact that the decree had become final did not deprive the court of the power and authority thereafter to enforce its mandate by a contempt proceeding. Final decrees are frequently enforced in this manner.

In *Rinehart & Dennis Co.* v. *McArthur*, 123 Va. 556, 563, 564, 96 S. E. 829, we said:  "* * the fact that the decree was final did not render the court powerless to enforce it by contempt proceedings.  Had the fact that the clerk refused to pay the money been reported to the court, it could, and doubtless would, have proceeded against him for contempt.  Such a procedure would not have been a procedure in the cause, which was ended, but a procedure *beyond* the cause for the enforcement of the decree.  *Cocke* v. *Gilpin*, 1 Rob. (40 Va.) 20, 28.  As said by Judge Brooks, in the last-mentioned case, 'All decrees must be enforced by attachment when any party is in contempt of the court, and this necessity is most frequent in cases of final decrees'."

Again, as we pointed out in *Lindsey* v. *Lindsey, supra* (158 Va., at page 652), a rule to show cause why the payment of alimony should not be enforced by a contempt

proceeding is ancillary to and in support of the divorce suit and its decrees.

Usually a contempt proceeding to enforce the terms of a final decree is instituted by the filing of a written petition or motion, alleging that the alleged contemnor has failed to comply with the mandate of the court, and praying for the issuance of a rule against him to show cause why he should not be adjudged in contempt. On such application the court enters an order, or citation, directing the alleged contemnor to appear before it at a stated time and place to show cause, if any, why he should not be attached or otherwise proceeded against according to law for the contempt.

Upon service of the order on the alleged contemnor, or upon his appearance in court, he is permitted to file an answer setting forth his defense to the charge. On the issue thus joined the evidence is heard and the matter determined by the court. See Lile's Equity Pleading and Practice, 2d Ed., pp. 299, 300.

Frequently, however, the order to show cause is issued on the verbal motion of counsel for the complaining party, but with the like requirement that a copy of the order be served on the alleged contemnor and that he be given an opportunity of being heard thereon. Apparently this course was followed in the case before us.

But whichever course is pursued, and although the contempt proceeding may be captioned under the style of the principal suit in which the decree sought to be enforced was entered,[2] it is ancillary to or beyond the principal suit. Hence, in the case before us it was not necessary that the main suit be reinstated on the docket.

However, the reinstatement of the cause did not vitiate the ancillary proceeding. A proper order to show cause

[2] In Virginia civil contempt proceedings are usually prosecuted in the names of the parties (e. g., *West* v. *West*, 126 Va. 696, 101 S. E. 876), while criminal contempt proceedings are prosecuted in the name of the Commonwealth against the contemnor (e. g., *Robertson* v. *Commonwealth*, 181 Va. 520, 25 S. E. (2d) 352, 146 A. L. R. 966).

was entered, a copy thereof was served on the defendant husband, and he appeared in open court in response thereto. He was afforded a full opportunity for presenting his defense. So far as the record shows he made no objection to the reinstatement of the cause on the docket, nor did he insist that the contempt proceeding be instituted and conducted as an independent or ancillary matter. Clearly he waived the technical error in the proceeding of which he now complains. 17 C. J. S., Contempt, section 69, p. 86; *Idem*, section 81, p. 104.

Finally, it is contended that the right to prosecute this proceeding was barred by the statute of limitations. The appellant invokes the provisions of Code, section 4768, as amended by Acts 1940, ch. 139, p. 189, which provides in part that "a prosecution for a misdemeanor, or any pecuniary fine, forfeiture, penalty or amercement, shall be commenced within one year next after there was cause therefor."

Clearly this statute has no application to the present proceeding, for this is not a criminal prosecution. As we said in *Roanoke Water Works Co.* v. *Roanoke Glass Co.*, 151 Va. 229, 235, 236, 144 S. E. 460, 462, "Proceedings for contempt of court are of two classes—those prosecuted to preserve the power and to vindicate the dignity of the court, and those instituted to preserve and enforce the rights of private parties. The fomer are criminal and punitive in their nature; the latter are civil and remedial." See also, *Drake* v. *National Bank of Commerce*, 168 Va. 230, 239, 190 S. E. 302, 306, 109 A. L. R. 1517.

The purpose of the present proceeding is to enforce the rights of a private party, the appellee wife, and is, therefore, a civil and not a criminal contempt proceeding.

It is well settled that a proceeding to enforce the payment of alimony is a civil and not a criminal contempt proceeding. 12 Am. Jur., Contempt, section 6, p. 393; *Smith* v. *Smith*, 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149; *Dyer* v. *Dyer*, 213 N. C. 634, 197 S. E. 157; *Lief* v. *Lief*, 14 N. J. Misc. 27, 178 A. 762.

But it is argued that under the principles announced in

*Gompers* v. *United States*, 233 U. S. 604, 34 S. Ct. 693, 58 L. Ed. 1115, Ann. Cas. 1915D, 1044; *Appeal of Marks*, 144 Pa. Super. 556, 20 A. (2d) 242, and like cases, the above statute should be applied by analogy to bar the present proceeding.

These were cases of criminal contempt. In the *Gompers Case* the prosecution was for the violation of an injunction which was a specific offense under the federal statute. Hence, the court held that it was barred by the three-year statute of limitations applicable to the prosecution of such an offense.[3]

It is true that Mr. Justice Holmes said in the *Gompers Case* (233 U. S., at page 612) that even if the statute of limitations did not in terms cover the offense, it should be applied by analogy. But we have been pointed to no authority, nor have we been able to find any, holding that this principle should be applied in prosecutions for civil contempt. In our opinion it should not be done.

Whether Code, section 4768, applies to a prosecution for criminal contempt is not before us and we express no opinion thereon. The section does not, we think, apply to the present civil contempt proceeding.

We are of opinion that in the absence of a statutory limitation, the lapse of time did not deprive the lower court of the power and authority to enforce its decrees by the contempt proceeding. 17 C. J. S., Contempt, section 67, pp. 83, 84, and cases there cited.

Whether the delay in instituting the contempt proceeding was a sufficient reason for withholding the entry of the order to show cause and the decree complained of is not before us. A determination of this question would, of course, depend on the evidence bearing on the circumstances of the delay. Since such evidence has not been brought to us, we presume that the action of the trial court was correct.

On the whole we find no reversible error in the record, and accordingly the decree complained of is

*Affirmed.*

[3] See also, *Pendergast* v. *United States*, 317 U. S. 412, 63 S. Ct. 268, 87 L. Ed. 368.