ROBERT A. REID

v.

JUDITH N. REID

No. 1484-89-2

Decided May 26, 1992

COUNSEL

Ronald R. Tweel (Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., on briefs), for appellant.

John K. Taggart III (Tremblay & Smith, on brief), for appellee.

## ON REHEARING EN BANC

OPINION

**BENTON, J.**—In this domestic relations appeal, the Court granted a rehearing *en banc* to consider whether Robert Reid may seek restitution of money paid as spousal support to his former wife under a decree that was reversed and set aside on direct ap-

peal. A panel of this Court, with a dissent, held that restitution could not be had for spousal payments improperly ordered. *See Reid v. Reid*, 12 Va. App. 1218, 409 S.E.2d 155 (1991). For the reasons that follow, we conclude that the doctrine of restitution may be invoked, and we remand to the trial judge for a determination of the extent to which restitution should be ordered.

## I.

This case was first appealed to this Court after the trial judge entered a decree granting a divorce on the ground that the parties had lived separate and apart for one year. Code § 20-91(9)(a). In that appeal, this Court concluded that the trial judge erred in denying the husband a divorce based on the wife's desertion and in granting her spousal support.[1] *See Reid v. Reid*, 7 Va. App. 553, 375 S.E.2d 533 (1989). This Court also held that the trial judge erred in applying the factors of Code § 20-107.3 to fashion a $50,000 monetary award in the wife's favor and in awarding the wife attorney's fees. *Id.*

On remand, the trial judge granted to the wife a monetary award in the amount of $35,000, ordered the husband to pay $18,138.44 for the wife's attorney's fees, and ordered the husband to pay costs. The trial judge denied the husband's "Motion for Recoupment" and denied the husband a judgment against the wife for $25,200, the amount the husband had paid in spousal support.[2]

---

[1] In 1982, when this divorce suit was filed, fault such as desertion barred spousal support. *See* Code § 20-107.1.

[2] Although the husband's motion in the trial court was styled "Motion of Equitable Recoupment," the relief that he sought was the return of money that he paid to his former wife as spousal support. "Restitution" is the more appropriate term to describe the relief sought.

> As a word descriptive of a distinct cause of action or claim of a party [restitution] has a definite meaning in the law; viz., that a party against whom an erroneous judgment or decree has been carried into effect is entitled, upon reversal of such judgment or decree, to have restitution, by writ of restitution if necessary, of what he had lost thereby. It also has a more general meaning as indicative of the principles attending the restoration or return or reparation to which a party may be proven to be entitled in an appropriate proceeding, and is connected with the principle of unjust enrichment.

*William Whitman Co. v. Universal Oil Prods. Co.*, 125 F. Supp. 137, 148 (D. Del. 1954)(footnote omitted). It is generally held that "the remedy of restitution is not confined to any particular circumstance or set of facts. It is, rather, a flexible, equitable remedy available whenever the court finds that 'the defendant, upon the circumstances of the case,

## II.

■ It has long been the rule in Virginia that if, pending an appeal, the appellant has paid the judgment that is being appealed, the appellant, upon reversal of the judgment, is entitled to restitution of the money so paid. *Green & Miller v. Brengle*, 84 Va. 913, 916, 6 S.E. 603, 604-05 (1888); *Jones v. Bradshaw*, 57 Va. (16 Gratt.) 355, 362 (1863); *Flemings v. Riddick's Ex'r*, 46 Va. (5 Gratt.) 272, 278 (1848). The same general rule is found in other jurisdictions. *See, e.g., Mathison v. Clearwater County Welfare Dep't*, 412 N.W.2d 812, 813 (Minn. Ct. App. 1987); *Shanahan v. Shanahan*, 80 A.D.2d 738, 739, 437 N.Y.S.2d 169, 171 (1981); *Guaranty Sav. Assurance Co. v. National Am. Bank*, 407 So. 2d 795, 797 (La. Ct. App. 1981), *writ denied*, 410 So. 2d 1135 (La. 1982); *State ex rel. State Highway Comm'n v. Morganstein*, 588 S.W.2d 472, 476-77 (Mo. 1979); *Currie v. Drake*, 550 S.W.2d 736, 740-41 (Tex. Civ. App. 1977); *Rhodes v. Sigler*, 44 Ill. App. 3d 375, 377-78, 357 N.E.2d 846, 849 (1976). This rule is consistent with the Restatement of Restitution § 74 (1937), which provides:

> A person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed . . ., unless restitution would be inequitable . . .; if the judgment is modified, there is a right to restitution of the excess.

The husband's case for restitution requires consideration of two fundamental concepts: (1) this Court's authority under Code § 17-116.09 to affirm, reverse, modify, or set aside a judgment or order of the trial court, and (2) upon reversal on appeal of an initial support order made pursuant to Code § 20-107.1, the trial judge's duty to correct the trial error. In *Flemmings*, the Supreme Court explained:

> The power of a Court to repair the injury occasioned by its own wrongful adjudication, is not derived from a mandate of the appellate forum, made upon rendering the judgment or decree of reversal, but is substantially the same which it ex-

is obliged by the ties of natural justice and equity' to make compensation for benefits received." *Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985)(citation omitted).

ercises when its own process has been abused, or used without authority, by its suitors or ministerial officers. . . . And so it may [award a writ of restitution] where its process has been misapplied by its own authority erroneously exercised, as is made manifest by a reversal of the judgment or decree on which it issued, whether accomplished by its own jurisdiction, or that of a higher appellate tribunal.

\* \* \*

That the mandate for restitution is merely declaratory or directory [rather than statutorily imposed], is obvious from the consideration, that it is never refused upon a reversal on the merits, unless for the want of sufficient evidence to shew that the erroneous judgment or decree has been actually enforced; and then the refusal is never entered on the record, but the whole matter silently referred to the cognizance of the Court below.

\* \* \*

Our accustomed omission of a mandate for restitution cannot, therefore, where there has been a reversal upon the merits, be treated as resulting in the monstrous perversion of justice, that there shall be no restoration to what has been lost by occasion of the erroneous judgment or decree; nor in ousting the Court below of its inherent and salutary jurisdiction of correcting the misapplication of its own process. . . .

46 Va. (5 Gratt.) at 281-84. *See also* Rule 1:1.[3]

---

[3] Because the panel decision was premised upon a discussion of vested rights, we note that the resolution of the issue is not controlled by vested rights principles. "[A] litigant, successful in the trial court, [does not] acquire a vested right upon entry of the judgment; the right is inchoate and does not become vested until the judgment has been affirmed on appeal or the time allowed for appeal has expired." *Fletcher v. Tarasidis*, 219 Va. 658, 661, 250 S.E.2d 739, 740 (1979)(citing *Kennedy Coal Corp. v. Buckhorn Coal Corp.*, 140 Va. 37, 45, 124 S.E. 482, 484-85 (1924)).

The effect of reversing [a] decree . . . [is] to abrogate it, and the cause [stands] in the circuit court precisely as it did before the entry of the decree. The decree [is], in effect, expunged from the records, and the parties to the litigation [are] restored to their original rights. A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution. . . .

*Ure v. Ure*, 223 Ill. 454, 463, 79 N.E. 153, 156 (1906) (citations omitted).

More recently, in *Young v. Young*, 212 Va. 761, 188 S.E.2d 200 (1972), the Supreme Court set aside a trial judge's order denying spousal support to the wife upon an initial application and remanded the case to the trial judge with instructions "to determine the amount of [spousal support] to be awarded the wife." *Id.* at 762, 188 S.E.2d at 201. On remand, the trial judge granted spousal support to the wife effective three days prior to the date of the trial judge's order. On appeal from that order, the Supreme Court held:

> We have adopted the rule "that the time permanent alimony shall commence is within the sound discretion of the court and may be made effective as of the date of the commencement of the suit." In rejecting [the wife's] argument, the chancellor assigned definitive grounds. We cannot say that his refusal to make the alimony award effective as of the date of the commencement of the suit was an abuse of discretion.
>
> However, our opinion [on the first appeal] foreclosed the exercise of the chancellor's discretion to fix a commencement date later than the date of our mandate. Accordingly, we hold that the award of alimony granted [the wife] by the [trial judge's] decree . . . is effective beginning [the date of the mandate of the first appeal] with interest from that date.

*Young v. Young*, 215 Va. 125, 126, 207 S.E.2d 825, 825-26 (1974) (citations and emphasis omitted). *See also Hughes v. Hughes*, 173 Va. 293, 306, 4 S.E.2d 402, 407 (1939) (reversing on direct appeal the trial judge's denial of spousal support to the wife under Code § 5111 (now Code § 20-107.1, as amended 1988), and ordering the trial judge to award spousal support to the wife and to calculate restitution if any due to husband for sums he may have paid). These cases contradict the argument urged by the wife that the reversal of a support obligation leaves

---

Here, the decree awarding spousal support was reversed on appeal and, therefore, the inchoate claim to support never vested. Since the claim never vested, the concept of retroactivity is irrelevant to the issue presented in this appeal. *See generally Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 754 (1984). This Court's reversal of the trial judge's spousal support decree became the law of the case. No legal principles of retroactivity are involved in applying the law of this case to the parties of this case. Our determination does not compromise a court's authority to modify retroactively a presumptively lawful, pre-existing award of spousal support.

the husband, who paid in accordance with the now vacated judgment, remediless.

█ The statutory limitations of Title 20, which control revision of decrees based on changed circumstances, do not apply to this case because the question here concerns an error made in the trial judge's original determination. The statutory authority to revise and alter a decree based on a change in circumstances involves a reconsideration of the parties' previously determined rights. *See Turner v. Turner*, 3 Va. App. 31, 33-34, 348 S.E.2d 21, 22 (1986). Application of principles of restitution concerns the legal and proper application of the Court's inherent power "to repair an injury occasioned by its own wrongful adjudication." *Flemings*, 46 Va. (5 Gratt.) at 281. When the trial judge's decree is reversed, vacated, or set aside due to error, it is a nullity and may give rise to the remedy of restitution. *Id.*

█ The trial judge's authority to make an award of support and maintenance is statutory. *See Jackson v. Jackson*, 211 Va. 718, 719, 180 S.E.2d 500, 500 (1971). Moreover, the decision *whether* to make an award is specifically prescribed as follows:

[N]o permanent maintenance and support shall be awarded from a spouse if there exists in such spouse's favor a ground of divorce [for adultery, sodomy, .or buggery committed outside the marriage]. However, the court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties. . . .

The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other [fault] ground for divorce under the provisions of § 20-91(3) or (6) or § 20-95.

Code § 20-107.1. The statute authorizes a court to "make such further decree as it shall deem expedient concerning the maintenance and support of the spouses." *Id.* Thus, apart from the inher-

ent authority to order restitution, as described in *Flemings*, this clause authorizes a trial judge to order, in the appropriate case, restitution of spousal support paid under a decree that is later vacated. *See Hughes*, 173 Va. at 306, 4 S.E.2d at 407.

Our Supreme Court has long adhered to the view that a trial judge's spousal support order, when reversed on appeal, must be modified from a date that pre-dates the order of the appellate court. In *Hughes*, the trial judge refused to grant either party a divorce and also refused to award the wife spousal support under a precursor to Code § 20-107.1 that contained similar language. *Id.* at 297, 4 S.E.2d at 403. Former Code § 5111 read as follows:

> Upon decreeing that neither party is entitled to a divorce, the court may make such further decree as it shall deem expedient concerning the estate and maintenance of the parties, or either of them. . . .

*Id.* at 303, 4 S.E.2d at 406. Holding that the trial judge erred in not awarding spousal support, the Supreme Court remanded the case and ordered the trial judge to

> [d]etermine what would be a reasonable and just amount of alimony to which the wife is entitled under the circumstances disclosed, payment of the same to be begun as of the date the decree was entered refusing an allowance of the same to her, the husband to be given credit for any monthly sum or sums he may have theretofore paid his wife.

*Id.* at 306, 4 S.E.2d at 407-08. As *Hughes* illustrates, the concept of an equitable balancing of payments and entitlements from the date of contested error is not foreign to our jurisprudence. Similarly, when applying identical language found in Code § 20-107.1, we should be mindful of the equities in this case, in which the husband has unjustly paid support under threat of contempt. *Cf. Young*, 215 Va. at 126, 207 S.E.2d at 825-26. ("We have adopted the rule 'that the time permanent alimony shall commence is within the sound discretion of the court and *may* be made effective as of the commencement of the suit.'").

While common law provides various methods for securing restitution, *see* Restatement of Restitution at § 74, Virginia case law

requires that we direct the trial court to order restitution.

> [F]or it cannot be conceived as the duty of the Court below to yield restitution where there has been no loss, or where it has been already made; or that the Appellate Court, without the direct and certain means of information possessed by the Inferior Court, has undertaken collaterally, incidentally and without enquiry, upon merely casual evidence, to determine conclusively the question of loss.

*Flemings*, 46 Va. (5 Gratt.) at 283. The trial judge, upon appropriate evidence, must balance the equities and determine the appropriate amount of restitution. In the present case, the evidence is sufficient to "indicate that the appellant [is] entitled to redress, at least to some extent, and to what extent [is] a proper subject for enquiry before [the trial judge]." *Id.* at 284.

■ Although the trial judge may not deny restitution because of a perceived "moral duty" on the part of the payor spouse to make payments, the trial judge "can properly refuse restitution . . . if restitution would involve a substantial hardship or expense." *See* Restatement of Restitution § 74 Cmt. C (1937). *See generally Maslankowski v. Carter*, 291 Ala. 8, 277 So. 2d 91 (1973) (payor must establish that it would not be inequitable to require payee to return money paid to satisfy judgment which has been reversed); *Holmes v. Williams*, 127 Cal. App. 2d 377, 273 P.2d 931 (1954) (payor is entitled to restitution if judgment is reversed unless that result would be inequitable or the parties had contracted the payments as final); *Alexander Hamilton Life Ins. Co. v. Lewis*, 550 S.W.2d 558 (Ky. 1977) (restitution is not inequitable where payees were on notice that judgment might be set aside and payees would not suffer undue hardship because their net worth was in excess of the amount of insurance proceeds received).

■ A judgment of restitution for wrongfully ordered spousal support will rest upon the exercise of the trial judge's weighing of the equities. In the ordinary case, full restitution should be awarded. Where the payee spouse has the means to make restitution, or will have in the foreseeable future, the trial court shall require restitution accordingly. However, the trial judge, in weighing the equities upon appropriate evidence, is not required to order in all cases total restitution. In the proper case, the payee spouse

who has disposed of the funds for necessities need not be required to repay all the funds if to do so would render him or her impecunious or would cause inequitable results.[4] *See Shanahan*, 80 A.D.2d at 741, 437 N.Y.S.2d at 171 (restitution will not ordinarily be granted because of the "hardship" of forcing a spouse to repay large sums of money); *Thompson v. Baltimore & O.R.*, 72 F. Supp. 65, 67-68 (E.D. Mo. 1947) (restitution is not a matter of right but, rather, is a matter of discretion to be exercised in accordance with sound principles of equity to correct what a litigant has lost by the payment of a judgment that is later reversed on appeal).

For these reasons, we hold that the trial judge erred in concluding that no basis in law exists for the husband's petition for restitution of spousal support paid while this matter was pending on appeal. To hold otherwise would "preclude[] [in every case] the . . . correction of an erroneous trial court judgment granting, denying, or modifying . . . [a] support award and irrevocably perpetuate[] the injustice of such judgment during the appellate process." *Wasson v. Wasson*, 439 So. 2d 1208, 1213 (La. Ct. App.)(Lanier, J., concurring), *writ denied*, 443 So. 2d 592 (La. 1983). Accordingly, we remand the matter to the trial judge for a determination of the amount of restitution that should be ordered.

---

[4] Once support has been decreed by the trial judge upon an initial request for spousal support, the payor spouse who decides to appeal may seek from the trial judge an order suspending execution of the decree for support. *See* Code § 8.01-676.1(D). Thus, even though "an order compelling [one spouse] to support [the other] . . . is a public as well as a marital duty," *West v. West*, 126 Va. 696, 699, 101 S.E. 876, 877 (1920), the legislature has empowered the trial judge, upon proper application, to stay the effect of a spousal support order pending appeal if the trial judge, in the exercise of discretion, deems it sound to so do. In a few cases, a spouse who has been determined to be eligible for support and who has been judged in need according to the factors in Code § 20-107.1 may be denied support payments pending appeal if the trial judge determines from the circumstances presented that a stay is warranted. If the payor spouse is successful on appeal in those cases, the payor spouse will have suffered no financial detriment. There is no policy basis upon which to conclude that the payor spouse who is not able to convince the trial judge to stay the award pending appeal should be foreclosed from seeking to demonstrate that equities allow a restitution of money paid if, on appeal, the decree of support is reversed and vacated. Conversely, the trial judge, upon the exercise of discretion, may deny suspension and bond so that a needy spouse may continue to pay rent, eat, and provide for other necessities. That is not to say the payee spouse may not be obligated to compensate the payor spouse for erroneous payments. But restitution is not an absolute right since it is subject to the trial court's weighing of the equities.

## III.

When this case was remanded, the trial judge was required to reconsider the monetary award and to apply the statutory factors enumerated by Code § 20-107.3 in light of this Court's determination that the wife was guilty of desertion. *See* Code § 20-107.3. The husband refers to transcripts which were not made part of the record on appeal to support his contention that the trial judge abused his discretion in applying the statutory factors. However, since there is no proof of this contention contained within the record, the judgment of the trial judge is presumed to be correct and we will not overturn his decision. *Kaufman v. Kaufman*, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988).

## IV.

■ The record does not prove that the trial judge abused his discretion in awarding the wife attorney's fees. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *Graves v. Graves*, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987) (citation omitted). In the absence of any evidence of an abuse of discretion, we affirm the trial judge's award of attorney's fees to the wife.

*Affirmed in part, reversed in part, and remanded.*

Bray, J., Coleman, J., Moon, J., and Willis, J., concurred.

Koontz, C.J., joined by Baker, J., and Elder, J., concurring in part and dissenting in part.

I concur with the majority's affirmance of the monetary award and attorney's fees. I respectfully dissent from the remainder of the majority's decision.

I agree with the majority that, although Dr. Reid filed a "Motion of Equitable Recoupment" in the divorce court, the relief Dr. Reid seeks is in the nature of restitution. This is necessarily so because neither statutory recoupment embodied within Code § 8.01-422 nor common law recoupment is applicable to spousal support awards. Statutory and common law recoupment are available only when the claim grows out of an action on a contract. *See Odessky v. Monterey Wine Co.*, 188 Va. 184, 189, 49 S.E.2d 330,

332 (1948). "Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship," *Brown v. Brown*, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987), not from a contract. *See also Capell v. Capell*, 164 Va. 45, 49, 178 S.E. 894, 895 (1935).

Appellate reversal of an erroneous spousal support award is not an infrequent occurrence in this Commonwealth. For more than one hundred years, however, no statutory provision has specifically provided and no Virginia appellate decision has recognized the authority of our divorce courts, or the appellate courts, to order "restitution" of previously paid spousal support where the divorce court initially had jurisdiction over the subject matter and the parties and the decree was not entered as a result of fraud upon the court. Today, the majority finds our courts possess "inherent" power to order restitution. In my view, no such power, express or inherent, exists.

Although the divorce courts are equity courts, their jurisdiction in domestic relations cases is entirely statutory and limited. "A suit for divorce is in its essence and character qualifiedly a proceeding in *rem*, and is very different from a transitory cause of action, and does not involve an appeal to the general jurisdiction of the equity forum." *McCotter v. Carle*, 149 Va. 584, 592, 140 S.E. 670, 673 (1927). Thus, "[t]he many limitations, both in respect to jurisdiction and procedure, placed upon divorce suits by the statute, differentiate the divorce case from ordinary suits in equity and render it a chancery case *sui generis*." *Id.* at 593, 140 S.E. at 673. *See also Westbrook v. Westbrook*, 5 Va. App. 446, 455-56, 364 S.E.2d 523, 529 (1988). Because the authority of the divorce court is derived entirely from the applicable statutes, whatever "inherent" authority they may have is limited, in my view, to that authority which is necessary to apply and enforce the statutes from which they derive their express authority. The majority decision, however, extends that inherent authority beyond the scope of the pertinent statutes.

The rationale employed by the majority is flawed in several respects. The majority places its primary reliance upon *Flemings v. Riddick's Ex'r*, 46 Va. (5 Gratt.) 272 (1848), because it is unable to cite a Virginia appellate decision that specifically holds that a spouse is entitled to "restitution" of spousal support paid prior to the reversal on appeal of an erroneous spousal support award. No

such decision apparently exists. *Flemings*, however, did not involve a spousal support award. It involved a judgment for money. "[A] decree for alimony [now spousal support] is *essentially different* from an ordinary debt or *judgment for money* . . . . It is an order compelling [one spouse] to support [the other], and this is a public as well as a marital duty — a·moral as well as a legal obligation." *West v. West*, 126 Va. 696, 699, 101 S.E. 876, 877 (1920) (emphasis added); *accord Eddens v. Eddens*, 188 Va. 511, 517, 50 S.E.2d 397, 400 (1948). In placing its primary reliance upon *Flemings* to find a right to restitution for spousal support previously paid, the majority necessarily equates a judgment for money with a decree for spousal support even though they are "essentially different." The only valid similarity between the judgment for money in *Flemings* and the spousal support award in the present case is that they were both erroneous.

Similarly, *Hughes v. Hughes*, 173 Va. 293, 4 S.E.2d 402 (1939), and *Young v. Young*, 215 Va. 125, 207 S.E.2d 825 (1974), cited by the majority, do not support a right to restitution of previously paid spousal support. Restitution was not involved in either case. In *Hughes*, the Court ordered the trial court to award spousal support from the date spousal support had been previously denied to the wife and to *credit* the husband with any payments he may have already paid. Giving credit to the husband against his ongoing obligation to pay spousal support is decidedly and essentially different from granting a judgment of restitution against the wife for past payments made by the husband. The credit in *Hughes* involved a prospective act, not a retroactive one such as that involved in granting restitution. In addition, giving a credit to the husband against future payments does not result in a judgment against the wife. In *Young*, the Court had previously reversed a *denial* of spousal support to the wife and had directed the divorce court to determine upon remand the amount to be awarded to her. Upon a subsequent appeal, the Court held that the spousal support could begin no later than the date of the Court's mandate in the prior appeal. Again, restitution was not an issue. The Court did not speak retroactively so as to create a right of the husband to recover anything. Rather, the Court merely determined that it spoke as of the date of its mandate in the first appeal.

Although the absence of any prior Virginia appellate decisions specifically permitting restitution for erroneously awarded spousal support in itself strongly suggests that restitution is not applicable to such awards in this Commonwealth, I recognize that appellate courts often are presented with novel issues for which there is no clear precedent. In such instances, resort to analogy and decisions from our sister states are time-honored means for resolving such issues. The foregoing cases, however, provide no support, even by analogy, for the majority's conclusion that a spouse may recover all or part of spousal support paid pursuant to an erroneous decree. To rely on *Flemings* is to equate an erroneous judgment for money with an erroneous decree for spousal support, ignoring the fact that the two are "essentially different." To rely on *Hughes* is to equate a credit for past payments against an ongoing obligation with a judgment for restitution for past payments, the logic of which cannot be supported.

Reference to a few of the decisions from our sister states illustrates that those states have developed no consistent rule on the present issue and, consequently, the majority can find little comfort in relying upon them. For example, in *Skinner v. Skinner*, 252 Ga. 512, 314 S.E.2d 897 (1984), the Georgia court held that spousal support awards cannot be given retroactive application and, thus, the payor spouse is not permitted an allowance of credit for past payments. In contrast, the New York courts are apparently in conflict. In *Averett v. Averett*, 110 Misc. 584, 181 N.Y.S. 645, *aff'd*, 191 A.D. 945, 181 N.Y.S. 927 (1920), the court held that the husband was required to support his wife until he was judicially absolved from that obligation and he was not permitted to recover the sums paid under a decree subsequently overturned on appeal. This case is not cited by the majority. However, in *Shanahan v. Shanahan*, 80 A.D.2d 738, 437 N.Y.S.2d 169 (1981), a case cited by the majority, the court held that courts have the power to modify retroactively a spousal support award and to allow the payor spouse to recover sums previously paid. In contrast, in *Bryant v. Bryant*, 130 Misc. 2d 101, 495 N.Y.S.2d 121 (N.Y. App. Div. 1985), a case not cited by the majority, another New York court acknowledged the *Shanahan* decision, but refused to follow it, holding instead that there is no right to restitution following a reversal or modification of a spousal support award.

Because there is no clear precedent in this Commonwealth and no consistent rule in our sister states, I would resolve the present issue with reference to two principles: (1) the statutory scheme from which our divorce courts derive their authority to award spousal support as an incident to granting a divorce, and (2) the unique nature of the marital relationship and the need for there to be an orderly resolution of the obligations that flow from that relationship. Applying these principles, I would hold that the obligation of one spouse in a position to provide for the needs of the other spouse exists until terminated by a final judicial decree not subject to further appeal.

Code § 20-96 grants the circuit court, on the chancery side, the authority to enter a decree for divorce. In this context, the circuit court is referred to as the divorce court. Code § 20-91 provides the grounds upon which a divorce may be granted. Pertinent to the present appeal, this Code section authorizes a divorce on the ground of desertion or separation for one year. As an incident of the authority to grant a divorce, Code § 20-107.1 provides the statutory authority for the divorce court to grant spousal support. This Code section grants broad discretion to the court in determining the amount and method of payment of such an award. Once an initial award has been granted, Code § 20-109 provides, in pertinent part, that "[u]pon petition of either party the court may increase, decrease, or *terminate* spousal support and maintenance *that may thereafter accrue . . .* as the circumstances may make proper." (emphasis added). In conjunction with Code § 20-109, Code § 20-112 provides for notice to the responding spouse of the proceeding to increase, decrease or terminate spousal support, and specifically provides, in pertinent part, that "[n]o support order may be *retroactively* modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party." (emphasis added).

When considered together, these Code sections provide a statutory scheme that authorizes the divorce court to grant spousal support consistent with the current needs of one spouse and the ability of the other spouse to provide for those needs. The circumstances of the parties may change from time to time. Thus, the statutory scheme authorizes the divorce court to grant an initial spousal support award, and, thereafter, to modify that award

based on the circumstances of the parties. The court's authority to modify an award, however, is specifically limited to prospective application except, during the period of time contemplated by Code § 20-112, where there is a lapse of time between giving notice to the responding spouse of a modification petition and the date on which the court acts on the petition. Code § 20-112, by its express terms, does not extend the court's authority to modify an award from the date of the initial award. Moreover, the authority to modify a spousal support award is limited to an "increase, decrease or termination" of such award, and does not thereby expressly or by implication extend the court's authority to award a judgment in favor of the payor spouse for previously paid amounts upon determining that prior spousal support was erroneously ordered.

The distinction is significant between the statutorily authorized "increase, decrease or termination" of a spousal support award in favor of one spouse and an award of a judgment of restitution in favor of the other spouse for previously paid spousal support. Specifically, the decrease or termination of a prior award creates no obligation on the payee spouse. In stark contrast, the award of a judgment of restitution in favor of the payor spouse creates an affirmative obligation on the payee spouse to satisfy that judgment. No provisions in the statutory scheme evince a legislative intent to ignore this distinction.[5]

The statutory scheme embodied within these provisions is clearly prospective with regard to the modification of previously granted spousal support awards. The divorce court has no express or implied authority to modify retroactively a spousal support

---

[5] A similar distinction is overlooked by the majority's reliance upon the provision of Code § 20-107.1, which provides that upon decreeing a divorce or decreeing that neither party is entitled to a divorce, "the court may make such further decree as it shall deem expedient concerning the maintenance and support of the spouses." The majority concludes that "apart from the inherent authority to make restitution, as described in *Flemings*, this clause authorizes a trial judge to order, in the appropriate case, restitution of spousal support paid under a decree that is later vacated." Code § 20-107.1 by its express terms is applicable to the "maintenance and support" of spouses. Restitution of previously paid spousal support to the payor spouse is not by definition or effect "maintenance and support" of that spouse. Restitution has nothing to do with the needs of that spouse. In short, spousal support and restitution are separate and distinct concepts. Thus, Code § 20-107.1 provides no authority to award a judgment for restitution of previously paid spousal support.

award that was merely erroneous and not entered as a result of lack of jurisdiction over the subject matter or the parties or as a result of fraud upon the court. In such cases, until prospectively modified or terminated by the divorce court, the obligated spouse is required to make his or her spousal support payments in accordance with the terms of the court's decree. *See generally Richardson v. Moore*, 217 Va. 422, 229 S.E.2d 864 (1976); *Cofer v. Cofer*, 205 Va. 834, 140 S.E.2d 663 (1965); *Newton v. Newton*, 202 Va. 515, 118 S.E.2d 656 (1961); *accord Martin v. Bales*, 7 Va. App. 141, 147, 371 S.E.2d 823, 826 (1988) (holding that a court is without authority to modify its spousal support decree retroactively and relieve a party of the obligation to pay past due installments). When an erroneous spousal support award is not terminated by the divorce court, the remedy is to appeal. *See* Code § 17-116.05(3). On appeal, pursuant to Code § 17-116.09, this Court may affirm, reverse, modify, or set aside the judgment or order of the divorce court. No provision is made for this Court to require the divorce court to order restitution of erroneously awarded spousal support when we reverse, modify, or set aside the judgment or order of the divorce court. We have no inherent authority to do so. Moreover, *Flemings* clearly holds that where restitution is appropriate in a case involving an erroneous judgment for money, it is the inherent authority of the trial court that is invoked and not authority flowing from the appellate court's mandate.

In addition to the lack of statutory authority of the divorce court to order restitution and thereby effectively modify retroactively its initial spousal support award, compelling public policy reasons exists to conclude that no "inherent power" exists in these courts to do so. A brief review of the procedural history of the present case is illustrative and brings these reasons into focus.

Pursuant to Code § 20-91(9)(a), the chancellor granted a divorce on the ground that the Reids had lived separate and apart for one year and, as an incident thereto, granted spousal support to Mrs. Reid based upon her needs and Dr. Reid's ability to provide for those needs. Dr. Reid had sought a divorce on the ground of Mrs. Reid's desertion, which at that time barred spousal support pursuant to Code § 20-107.1. On appeal, in *Reid v. Reid*, 7 Va. App. 553, 375 S.E.2d 533 (1989), we held that it was error to deny Dr. Reid a divorce on the ground of Mrs. Reid's desertion

and, consequently, because of the statutory bar, it was error to grant her spousal support. We specifically left intact that portion of the divorce decree which terminated the marriage relationship and only reversed the spousal support award. In that appeal, it was readily apparent that, at the time of the entry of the initial decree by the divorce court, that court had jurisdiction of the subject matter and the parties and the decree was not entered as a result of fraud upon the court. Because the divorce court had jurisdiction — the power to enter the divorce decree — it also had, as an incident thereto, the jurisdiction to grant the spousal support award. Thus, the divorce decree and the spousal support award were valid until and unless overturned on appeal. " '[I]f the inferior court has jurisdiction of the subject matter of the controversy, and the parties are before it, . . . a mistaken exercise of that jurisdiction does not render its judgment void.' " *Erickson-Dickson v. Erickson-Dickson*, 12 Va. App. 381, 388-89, 404 S.E.2d 388, 392 (1991) (quoting *County School Bd. v. Snead*, 198 Va. 100, 107, 92 S.E.2d 497, 503 (1956)). " '[T]he court has jurisdiction to err, as well as to correctly adjudicate the questions before it for decision, and the remedy to correct the errors of the court is solely by appeal.' " Id. (quoting *Farant Div Corp. v. Francis*, 138 Va. 417, 436, 122 S.E. 141, 147 (1924)). Contrary to Dr. Reid's assertions, and the majority's apparent conclusion, the support award was not void but, rather, was merely erroneous and thus voidable. "Obviously the power to decide [to grant the divorce on the ground of a one year separation and to award Mrs. Reid spousal support] includes the power to decide [those issues] wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law." *Nicholas v. Commonwealth*, 186 Va. 315, 320, 42 S.E.2d 306, 309 (1947) (citation omitted).

The distinction between a void decree and a voidable decree, in the initial appeal, permitted us to leave intact that portion of the divorce decree that terminated the marriage relationship, even though that decree erroneously failed to grant Dr. Reid a divorce on the ground of Mrs. Reid's desertion, and to reverse only the spousal support award. The distinction between a void and a voidable decree is also critical to the issue presented by the present appeal. The determination that an otherwise valid spousal support award is merely erroneous and, thus, voidable, and not void, provides logical support for the further determination that the unique

nature of the marital relationship and the need for an orderly resolution of the obligations that flow from that relationship require that the obligation of one spouse in a position to provide for the needs of his or her spouse exists until terminated by a final judicial decree not subject to further appeal. Consequently, no basis exists for an order of restitution for spousal support previously paid. More specifically, these considerations compel the conclusion that the holding in *Flemings* is not applicable to spousal support awards.

The marital relationship is unique both in terms of human experience and its importance to society. The obligations that flow from this relationship are founded on natural, moral and societal concepts. From the moment of the inception of this relationship, the parties are set apart from all others and bound to each both legally and morally. Each party to this relationship is responsible for the primary care and support of the other.

The failure of the marital relationship affects the parties and may, as well, affect society in general. It is in society's interest and is consistent with natural, moral and societal concepts that support obligations created within the marital relationship be the primary responsibility of the spouse in a position to provide for the needs of the other spouse and that this responsibility exist until terminated by a final judicial decree. This is so, because where a need for support by one spouse is established, it is in society's interest that a needy spouse not be required to seek public assistance to satisfy those needs unless necessary. Consequently, the law universally has recognized that the marital relationship and the obligations created within it are unique. Thus, it has been held that spousal support obligations flow from the marital relationship and not from contractual rights and obligations. *See Brown*, 5 Va. App. at 246, 361 S.E.2d at 368. Similarly, spousal support is awarded "to protect society's interests in the incidents of the marital relationship." *Jacobs v. Jacobs*, 219 Va. 993, 995, 254 S.E.2d 56, 57 (1979).

Legislative recognition of the uniqueness of the marital relationship and the obligations created within it are reflected in various Virginia Code provisions. For example, Code § 20-61 makes it a crime for either spouse to willfully neglect, refuse or fail to provide for the support and maintenance of the other spouse. Similarly, Code § 20-107.1 provides in pertinent part:

> [T]he court may make [a permanent support] award notwithstanding the existence of [a ground of divorce in a payor's spouse's favor] if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

These statutory provisions reflect a public policy, based upon the uniqueness of the marital relationship, that the spousal support obligations created within the marital relationship commence at the inception of this relationship and continue until and unless judicially terminated.

These same public policy considerations are reflected in statutory provisions governing appeals of support decrees to the appellate courts. As a general rule, a party who wishes the execution of a judgment from which an appeal is sought to be suspended is entitled to have the judgment suspended upon the filing of a satisfactory bond. Code § 8.01-676.1(C). However, "[t]he court from which an appeal is sought may refuse to suspend the execution of decrees for support and custody." Code § 8.01-676.1(D). This statute reflects the legislative recognition that compelling public policy reasons exist to cause the judgment for support to remain in effect and unabated during the pendency of an appeal. In short, it is in the public interest that public funds not be called upon to support a needy spouse unless and until the responsibility for that support has been removed from the other spouse. Moreover, to require compliance with a spousal support award, even an erroneous one, until judicially terminated is consistent with the "moral as well as a legal obligation" to do so until that time. *West*, 126 Va. at 699, 101 S.E. at 877.

In addition, the parties as well as society have an interest in the orderly resolution of the obligations that flow from the marital relationship. The orderly resolution of these obligations ensures that the primary obligation for support of a needy spouse remains with the other spouse throughout the proceedings and until that obligation is terminated. The orderly resolution of these obligations requires that the parties comply with court orders until and unless properly modified in subsequent proceedings at the trial and appellate level. This is the reason for the statutory requirement that

the divorce court decrees operate prospectively and not retroactively. There is no statutory authority and, moreover, no reason to justify a distinction between the rule applicable to the divorce courts and the rule applicable to the appellate courts with regard to the limitations of the prospective effect of court orders concerning spousal support.

The orderly resolution of the obligations that flow from the marital relationship is not preserved by the majority's reliance upon the notion that allowing restitution in these cases will rest upon the exercise of the chancellor's weighing the equities, and thus "need not be harsh" in a given case. In my view, a right to restitution and the subsequent proceedings to determine the amount to be restored will defeat the orderly resolution of spousal support obligations. The majority reasons that the payee spouse who has disposed of the funds for "necessities" need not be required to repay all of the funds if this would cause inequitable results. Spousal support is not limited merely to "necessities" of the payee spouse, but extends to those additional needs to which the spouse becomes reasonably accustomed during the marriage and that are consistent with the parties' station in life. *See Ray v. Ray*, 4 Va. App. 509, 513-14, 358 S.E.2d 754, 756-57 (1987). The majority's position necessarily places a payee spouse in a dilemma of preserving sufficient funds to satisfy a potential judgment of restitution or using those funds received for the purposes intended in the hope that it will be determined inequitable to award a judgment against him or her if the other spouse is successful in having the spousal support award terminated on appeal. Whatever else the majority opinion accomplishes, it certainly does not promote an orderly resolution of a spousal support dispute. Moreover, the majority's position ignores the uniqueness of the marital relationship and the obligations that flow from that relationship and treats the parties as having a mere contractual relationship with their rights and obligations controlled by principles of contract law.

In summary, in my view, there is no statutory or "inherent" authority for the courts of this Commonwealth to grant a judgment of restitution for erroneously awarded spousal support where the award was initially granted by a court that had jurisdiction to grant a divorce, had jurisdiction over the parties, and did not award support as a result of fraud upon the court. In such cases,

while the award is erroneous, it is not void, but rather voidable. The award creates an ongoing obligation until judicially determined by an order not subject to further appeal. When so terminated, the appellate court speaks at the time of its mandate and not retroactively.

Thus, in the present case, although Dr. Reid was erroneously ordered to pay spousal support, that order was voidable and, until terminated at the time of this Court's mandate in the first appeal, his obligation to provide for the needs of his wife was ongoing. Because the divorce court has no statutory or inherent authority to award restitution for sums paid prior to that time, and because we do not speak retroactively, I would hold that Dr. Reid has no right to restitution for the sums paid. Accordingly, I would affirm the trial court's denial of Dr. Reid's motion for recoupment.